at if we can have everyone who is not on the first case somehow magically vanish for the time being. And we'll hear from counsel in the U.S. v. Coriz case. Okay, we will hear from Ms. Kagan. Thank you, Your Honor. May it please the court. The constitutional guarantee to a fair trial means something, especially when the mandatory penalty is life. The district court allowed in almost every single piece of propensity evidence that the government requested in this case, putting Mr. Coriz at a severe disadvantage from the beginning when he was on trial for the rest of his life. For context, this trial took three days. There were two days of testimony. There were seven witnesses, three of which were called solely for propensity evidence, and another who also testified to propensity, that would be Officer Hohola, plus Leroy Chama, who testified to 404B evidence. So five of the seven witnesses that testified in the case spent time on propensity and other acts evidence that did not directly relate to the charge at issue. And only three of the seven witnesses had anything to say about the specific charge in the case. By my calculation, the amount of time spent on propensity testimony was nearly double that of testimony that directly related to the charge from 2015. This court cannot ignore the extremely prejudicial nature of propensity evidence in a sexual assault case, and of course the resultant risk that the jury convicted Mr. Coriz based on emotion rather than proof beyond a reasonable doubt. And that risk is amplified with the government's misconduct throughout this trial, starting with the venturing into reserved testimony during the very first government witness and culminating with the prosecutor's remarks to the jury disparaging defense counsel during rebuttal closing. Both prosecutors repeatedly disregarded the court's pretrial and in-trial rulings about what evidence and when and how it may come in. This forced the defense attorneys to constantly object and look to the jury as if, especially in the context of this case, that we were trying to hide something from them. And then the trial ended with a rebuttal closing argument during which the prosecutor disparaged the jury, first by calling Mr. Gonzalez rude for conducting a legitimate cross-examination with leading questions, and then second, by making a direct comment to the jury, a wisecrack per Judge Herrera, expected that when the defense counsel objected. So is there any doubt that the jury heard that? I mean, it's a little hard to tell from the record, but there's no doubt about that? There's no doubt. I was trial counsel, Your Honor, and I lodged the objection. And Mr. Nabak was right in front of the jury box when he made that comment directly to the jury. Does the record show that? The record reflects that he said, expected that. The record does have that. And then I believe if you go to Judge Herrera's, what Judge Herrera said when we were in front of the bench, I believe she did say something about that you can't make comments directly to the jury. So from her perspective, that's how she saw it as well. Right. I remember that statement. Thank you. Yes. So at this point, the defense had been forced to object repeatedly throughout the trial as the government ventured into areas of testimony which we had gotten pretrial rulings on. And then in some of his last words, the prosecutor makes this wisecrack to the jury that, of course, he expected yet another defense objection. Well, Ms. Kagan, I'm sorry to interrupt you, but is that entirely fair? I mean, I thought that the entirety of his statement was expected that. And it's true that is a completely unprofessional, inappropriate thing to say. On the other hand, in addition to Judge Herrera admonishing counsel, I wondered if it could also be taken. Frankly, when I read it, I thought the lawyer may have intended that as somewhat of a self-critical remark that maybe I should have expected that because I realize that I'm getting into precarious territory. I didn't take it that way in trial. I can't speak for how the jury took it. Of course, the transcript doesn't reflect tone. But I think that Judge Herrera's response kind of shows the general reaction in the courtroom to it, which is that everyone was pretty shocked that he had made such a comment directly to the jury. It didn't feel to me as if it was self-reflection. It felt to me, and I think the way Judge Herrera reacted to it as well, was that it was a comment designed to be critical of the defense attorneys. We believe that the cumulative prosecutorial misconduct in this case should warrant a new trial. First, it was pervasive and it lasted throughout the trial. The district court found many of the remarks and the way the government elicited testimony to be improper and not done according to best practice. I also think that this court can consider whether this was done in bad faith. I believe that there are six examples which suggest some type of bad faith on the part of the prosecutors. The first is that they did four times throughout the trial, they went into reserved or excluded testimony. So it's hard to do something like that, I think, four times during a relatively short trial, unintentionally. Well, when you say into excluded testimony, how many of those cases, those four situations did the excluded testimony get to the jury? Where answers were given and given to the jury. And in those cases that got to the jury, was there an admonishment by the court or did your client request an admonishment to the jury? So there were, most of them did. I think at least some of them did eventually get in front of the jury. My recollection of the record was that very few of them did. I mean, I'm not sure that none of them did. But I think that in a lot of cases, it was simply the question and we never got an answer. Yes, and that is correct. Most of it did not come in. And then one of the things came in later through how the judge had ruled that it should. Did the judge instruct the jury that lawyers' comments are not evidence to be considered? Yes, that was a general instruction that was provided to the jury. But there were no direct curative instructions or anything directed specifically at any of those instances. Right. Okay. Thank you. Yes. Secondly, at one point during the trial, there was an objection to testimony through Samantha Sheehy about whether she recalled seeing a movie Blood In Blood Out with Mr. Corice. And that was a piece of evidence that had been litigated pretrial and the court had excluded. And the government went into that and Mr. Nabak told the court at that point that the court, he did not believe the court had excluded that. But then he quickly changed his argument to say that we had opened the door. But all the, Ms. Kagan, in that, the only question that was asked, I think, was did you see the, about watching the movie, did you see the movie Blood In Blood Out with the defendant? Yes. And our point on this. That's, you know, maybe, I mean, that's not a, that doesn't insinuate anything. I mean, the next question was going to be, you know, was he standing in the corner, you know, doing improper things, but, or, and it also didn't have big, you know, breath, you know, you're going to have big breaths, but none of that was asked in front of the jury. That's correct. And that's why we're making a claim for cumulative prosecutorial misconduct. And that's why, you know, I'm asking the court to focus on, yes, this evidence, not all of this evidence came in. And one time it came in through the proper witnesses, the court had ruled, but throughout the trial, in a trial with all this propensity evidence, where three of the seven witnesses were solely dedicated to talking about other times and other things that Mr. Corbis has done wrong. Then we are forced to repeatedly object throughout each, each girl, throughout each testimony and jurors are humans. And yes, they're instructed to not take objections as evidence, but they're human beings and they're fallible as we all are. And they're naturally curious. And I think it's not a stretch to suggest that the jury understood that there were additional things out there that we were trying to hide in this case, especially when our client, you know, has all this other propensity evidence at hand. I don't, I don't think it's a stretch to conclude that the jury was left wondering what else they're not hearing about Mr. Corbis. What else is the defense hiding from us? So is the instruction, is the ruling that you're seeking from us, a ruling that the prosecutorial, there was prosecutorial misconduct, that it was so pervasive and dominant that it overwhelmed the jurors' ability to be fair and impartial on the evidence before it? Yes. Thank you. Yes. And that, and that is because of what I'm talking about, these objections and the, and the jury is left thinking, well, he must've done even more wrong than just what we heard about. So they're not even evaluating what happened to Chris Antortolita in the fall of 2015. They're evaluating who is Mr. Corbis as a person, and they're convicting him for that rather than whether he sexually assaulted Chris Antortolita as charged in 2015. And if we look at the direct evidence on that point, it's actually pretty slim. It's Chris Antortolita's testimony. And her story changed over time and a little bit at trial. She gave two pretrial statements to law enforcement and they were not consistent. So there was the, the, the evidence on that specific question is slim. And at the same time, as we pointed out in the briefs, Mr. Corbis was prohibited from confronting Chris Antortolita with questions about another allegation she had made at the same time involving Mr. Corbis' stepson, Davis Yahtzee. So pretrial, the court ruled that we would not be allowed to cross-examine her about that. So while there's just this evidence of the one time from her and all the other propensity evidence, the defense is forced to repeatedly object, making the jury think that we're trying to hide something. And then in some of his last words to the jury, the prosecutor comments on a defense objection expected that to the jury. And I think, as I pointed out before, by the way, the court took it, this court can kind of see how that was perceived in the courtroom, which is not self-reflective, but a disparaging remark towards defense counsel. And so I think that without any curative instructions directed specifically at the misconduct, that we cannot say that the jury was able to properly evaluate the evidence in this case, that the misconduct affected the verdict and that Mr. Corbis is entitled to a new trial. Is the plain error standard applicable on the prosecutorial misconduct claims? I believe that the standard of review is abuse of discretion, and that's under this court's Gabaldon case, which was where, because we made a motion for a new trial, right after the trial, because we made a motion for a new trial, the standard of review is abuse of discretion. That's what this court held in the Gabaldon case. And I also would note that the government has acknowledged in their answer brief that the standard of review for the cumulative misconduct claim is abuse is, I'm sorry, abuse of discretion. It's not a plain error analysis because we did object during rebuttal closing to an argument that the entire trial had been out of line and that we were entitled to a new trial for mistrial. So with that, I'd like to reserve the rest of my time for rebuttal. Okay, thank you. We'll hear from the ability. Good morning, Your Honors. May it please the court. My name is Emil Keeney, and I'm with the U.S. Attorney's Office in Albuquerque. I'd like to start with the last point that was raised about the standard of review. The standard of review generally for a motion for a new trial is abuse of discretion, but this court has held that where there's no objection to prosecutorial conduct claims made during the trial, then plain error review applies. So I would argue that plain error review standard of review applies to all claims except for the objection to the expected that comment. I think it's fair to take that objection there as a claim of prosecutorial misconduct. And in that case, the abuse of discretion standard of review applies. I think the best case this court, or the most detailed explanation of the standard of review, you can look at United States v. Christie, which was decided in 2019, which goes into the standard of review in some detail. Next, I'd like to move to the expected that comment, which was the first instance of alleged misconduct that was brought up. We don't claim that the prosecutor's comment was proper. It was improper and unprofessional. The district court so found, and we don't contest that. I would also say I don't think it was a self-reflective comment because when the prosecutor himself went up to the bench, he apologized and said, I lost my cool. So I want to be frank about that too. But the thing is, this wasn't a, well, I think it was an exasperation at this objection that he drew with what he thought was a proper argument. Of course, that doesn't excuse it. It was driven by exasperation by the number of objections by the defense. Isn't that evidence to be considered about what the jury might've felt? I mean, prosecutors are experienced. They're in trial all the time and they expect objections. That's part of the price of being a trial lawyer. But if the objections that the defendant was forced to make in this case were so much that the prosecutor said, gosh, I lost it, I'm sorry. I just got so frustrated by these objections. Isn't that pretty powerful evidence about what these extent of objections required of the defendant might've had on the jury? No, Your Honor, I think I took his remark as being an exasperation or frustration at that particular objection, not the other objections that the defense made during trial, which were sustained. I don't think that it's clear that simply having to object four times during the trial would have been prejudicial either. For one thing, the district court instructed the jury at the beginning of trial that there's gonna be objections. And if I sustain them, don't pay attention to them. And at the end of trial, the district court said, you're not supposed to guess what anything would have revealed. The second thing is that I think it's not clear that jury hearing objections that are sustained would think that the defense was necessarily trying to hide something. If I heard, the jury might've said, well, look, these prosecutors keep getting objections sustained against them. And maybe they're not prepared as they should be or draw a negative inference about them too. There's also, we haven't had any case law cited here, and I'm not aware of any that would predicate a cumulative error claim on four objections either. So no, I don't think that the jury would necessarily have taken it that way. There's no indication that the jury disregarded its instructions. And defense never wants to ask for a curative instruction at trial. They never wants, at least with the question, until they expected that comment, made any allegation of prosecutorial misconduct. So I don't think there's any grant. The record here doesn't reveal that the district court abused its discretion and thinking that, no, there wasn't a sufficient prejudice. If there was any prejudice from those questions to overturn the trial, to overturn the verdict. Is there a point in which a lawyer can so pervasively ask questions that he or she should have known were either excluded in the order of the motion in limine, or the whole point of a motion in limine and reserving a ruling. I mean, you would think that lawyers would realize even without explicit instruction that any judge would want those lawyers to bring it up in a recess when the jury is out or to approach the bench before a lawyer would knowingly ask a question in which the judge had already expressly and repeatedly reserved a ruling. Now, one of the difficulties with Ms. Gagin's position is I think that our case law is pretty scarce about whether it is prejudicial either under the abuse of discretion or any other standard when a lawyer is forced to object. This case seems to be somewhat of an outlier because of the pervasiveness in which the lawyer continually interjected when he or she should have known either like in the blood in, blood out incident that was explicitly excluded and then yet the lawyer gets up and asks Samantha this question or a number of areas where it was reserved and yet the judge and yet the lawyer specifically without any announcement, any hesitation leapt right into those areas. Is this a case where we ought to set the limits because of the egregiousness of what the prosecutor did in this case? No, Your Honor. I'd first though say that certainly a prudent lawyer would go to the bench first. If I were giving advice to our trial prosecutors, that's what I would tell them. But the district court here found that in several of these incidences, it seemed to rule that the prosecution was acting in good faith and that I think the key thing here to overturn a trial, you have to have some kind of prejudice. Also with the, you know, objecting four times and you've noted that there's no case law specifically on that subject. Since plain error review applies, there has to be well-established law on that point. And there isn't any, there hasn't any been cited. So, but going back to the lack of prejudice and the, or the good faith, I think the most difficult one for us is probably the one where the evidence was excluded. But, and the prosecutor thought the door was opened. In fact, that's what the defense counsel, when they went up to Sybar, the first thing she said is, he's going to say the door is open, but we didn't open the door. So they all knew what was going on there. And the district court in its ruling says, yes, that was my ruling, but the prosecutor thought that the door had been opened. She seemed to take that as, make that assessment, which your case law allows the district court to make. District court was present and was better able to evaluate the tone and the events going on in the courtroom. And that's why we have an abuse of discretion standard at minimum and plain error standard, we think because there was no prosecutorial misconduct objection. With respect to the reserved evidence, there were two instances where there was questions about the, what I call the choking incident. And that, that evidence came in through, through CT without objection. So the jury was going to hear about that. It was just a question of which witness the, through which that evidence was going to come in. And with respect to the, the photos, the district court had ruled earlier that if that's going to come in, there has to be a witness of personal knowledge. And you have to show that the age of the, of MT who was on the photos, that she was a minor at the time they were taking. So the prosecutor's first question was, did you see any photos? And I think that was going a good faith effort to establish the personal knowledge that was required. Now what he should have done next is ask about the age, but that again, that evidence never, never came up. So I think this is not the sort of case where there's pervasive prejudice. It's, it doesn't rise to the level of some of this court's other cases where, I mean, reversals has been cases where prosecutors ask questions that implicate the defendant's rights, constitutional rights, such as commenting on the right to silence or implying that there was something wrong with a defendant seeking counsel, or misstating the evidence in closing argument, or making some sort of attack on the integrity of defense counsel, such as implying that defense counsel has fabricated evidence or things of that nature. And that's the sort of thing that's led this court to reverse in the past. It's led the Supreme Court to reverse. And I think the district court was well within its discretion and thinking that this isn't that kind of case. I will move on. I'd like to talk about the Rule 413 evidence as well. Yes, there were several incidents of the defendant's prior sexual misconduct that were admitted at trial. But this isn't a case where almost every piece the government wanted to introduce was admitted. The district court issued a written order in which it carefully evaluated each piece of evidence, decided that the striking similarity of a lot of these incidents with the conduct charge in this case, as well as the frequency with which it occurred, justified the admission and made the probative value of it much higher than any prejudicial effect that's inherent in propensity evidence. And with respect to the last claim that the defense should have been allowed to cross-examine D-Y, there's no evidence that C.T.'s allegation against them was false. What C.T. apparently said is she thought that D-Y's sister saw some of this conduct and S.P. said, I didn't see it, I don't remember it. So what we have is a dispute about whether she actually saw it or she didn't see it, not about whether it actually happened or not. And that doesn't satisfy the demonstrable falsity standard. So unless the court has any other questions, we would ask the court to affirm the district court's exercise of its discretion in denying the motion for new trial. Thank you. Judge Bell or Judge I, do you have any questions for the appellee? No. I'm good. Okay. Ms. Gagin, you have some rebuttal time. Thank you, Your Honor. I want to go back to the government's comment that there was no request for a curative instruction. That is true. We did not request a curative instruction, but I would also point out that this court's case law suggests that the district court has its own obligation to properly instruct the jury and that the fact that the defense did not ask for a curative instruction is not fatal to our claim of a requirement for a new trial. Also, this court asked the government about whether this might be the case to set the limits of prosecutors going into excluded testimony and the effect of objections in light of the egregiousness of this case. And I would urge the court to do that, that case law is scarce. There's not really anything that this court has decided where the argument that we're bringing exists. And it's the conduct of the prosecutor was improper and it was throughout the trial. And this is significant. And I think it would be appropriate for this court to recognize that jurors are left questioning what the defense is hiding. And particularly the point that the government was making about that there was a question about the photographs and that Mr. Nabak should have asked yet next, what was her age? But after a question about the photographs, I objected. And then the next question that the prosecutor asked to the jury after the objection was what were the photos of? So the jury was left with that question and no answer that we objected to them getting. So that is a sort of specific instance. I would just say that there's no point to doing pretrial rulings and motions in limine if the government is not made to follow those. There's an interest in finality of the verdict, but there's also an interest in a constitutionally fair trial, which Mr. Cruz did not get. I'm out of time. Thank you. Judge Abell or Judge Ide, do you have any questions? No. Thank you. I want to thank counsel for both the appellate and appellate. Both of your submissions in writing and orally today, I think were first rate. They were very helpful to the court. This matter will be taken under submission. Thank you, counsel. Thank you. We'll hear from or we'll get on the screen. I think Pilley's lawyer will remain the same.